IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DELTA GROW SEED COMPANY INC.                                        PLAINTIFF

v.                              No. 4:07CV00186 JMM

SIKESTON SEED COMPANY INC.
AND JIM GOOCH                                                       DEFENDANTS

### ORDER

On February 15, 2007, plaintiff filed this case in the Lonoke County Circuit Court alleging claims for breach of contract, for fraud and misrepresentation, and for an accounting arising from the sale of seed by plaintiff during years 2004 through 2006. Defendants removed the case to this Court on March 8th on the basis of diversity jurisdiction since plaintiff is an Arkansas corporation and the defendants are citizens of Missouri.

Defendants filed a motion to dismiss, on March 26th, contesting personal jurisdiction.[1] In support of their motion, they filed a brief and an affidavit by Gooch, who is the president and sole shareholder of Sikeston Seed.

---

[1] Defendants also raised the issue of sufficiency of service in this motion and a renewed motion filed on May 2nd. However, plaintiff filed, on May 30th, an affidavit of service on defendants. That same date, defendants filed a second renewed motion to dismiss referencing the service of process on them on May 11th and renewing their arguments only as to lack of personal jurisdiction. On June 1st, plaintiff responded to the second renewed motion that, with the admission that the defendants had been served, there were no grounds for dismissal for defective service or summonses and incorporating its previous responses regarding personal jurisdiction. Thus, the issue of sufficiency of service is now moot.

Defendants assert that they assume that plaintiff is invoking the provisions of the Arkansas long-arm statute which allows the exercise of personal jurisdiction over a non-resident defendant to the fullest extent permitted by the Fourteenth Amendment's due process clause, turning on whether they have "minimum contacts" with Arkansas so as not to offend traditional notions of fair play and substantial justice. They argue that they have no connection with Arkansas, as set forth in Gooch's affidavit, except for the fact that the other contracting party to the contracts at issue is from Arkansas.

Gooch's March 23rd affidavit, submitted on behalf of both defendants, states that he is a citizen and resident of Missouri; he does not live in Arkansas; Sikeston Seed is a Missouri corporation with its principal place of business located in Missouri; it primarily does business with local growers and farmers in the Scott, Mississippi, New Madrid and Stoddard Counties of Missouri; and it does not do business in states other than Missouri. He continues that, in the dealings between plaintiff and Sikeston Seed giving rise to this case, he was the sole contact for Sikeston Seed and Emery Hughes[2] was his contact with plaintiff. Gooch states that Sikeston Seed was first hired by plaintiff to perform seed cleaning for plaintiff in 2001 and 2002 when Hughes called upon Gooch personally at Sikeston Seed's place of business in Missouri and hired Sikeston Seed to clean soybeans for his company. He recounts that all of the discussions relating to this business transaction occurred in Missouri and the actual soybean cleaning also occurred in Missouri.

Gooch relates Hughes met with him again in early 2002 in Missouri where they reached an agreement for his company to grow plaintiff's parent soybean seeds in 2002 in Missouri for sale in 2003; the arrangement for this transaction were made in person between Hughes and him at his place

---

[2]Although defendants refer to "Emory," the affidavit submitted by Hughes reflects that his name is "Emery" and so that spelling will be used.

of business in Missouri; the soybeans were actually grown and sold in Missouri; and all actions which related to these arrangements and their performance occurred in Missouri.

He continues that Sikeston Seed was hired in early 2004 to clean seeds for plaintiff in Missouri and to grow plaintiff's parent seed in Missouri in 2004 for sale in 2005, the solicitation of Sikeston Seed to perform these services was made by Hughes in person at Sikeston Seed's business in Missouri, the seed cleaning was performed in Missouri, and the seed was grown and sold in Southeast Missouri.

Gooch avers that Sikeston Seed advertises its services and products in Southeast Missouri publications; it has never directed its advertising to Arkansas farmers or growers; it does not solicit business for any entities in Arkansas, has no place of business in Arkansas, has no assets in Arkansas, has no bank accounts in Arkansas, and has no employees or agents in Arkansas. He states that Sikeston Seed is not registered with the Arkansas Secretary of State or the Arkansas State Plant Board, which registration would be a pre-requisite to Sikeston Seed engaging in its line of business in Arkansas; it was last registered with the Arkansas State Plant Board in 1998, but allowed its registration to expire because it was not in fact doing business in Arkansas and had no intention of doing any business in Arkansas in the future; Sikeston Seed voluntarily withdrew in 1998 from doing any business or being qualified to do any business in Arkansas; and it has done no business in Arkansas since that time.

On April 5th, plaintiff filed a response in opposition supported by brief and an affidavit by Emery Hughes, president of plaintiff, along with exhibits. It asserts that each of the defendants have had substantial and continuous contacts with Arkansas.

Plaintiff contends that it need only make a *prima facie* showing of personal jurisdiction over defendants by establishing the requisite minimum contacts by looking at the nature and quality of defendants' contacts with Arkansas, the quantity of contacts, the relationship between the cause of action and the contacts, Arkansas's interest in providing a forum for its residents, and the convenience of the parties. It argues that defendants' contacts with Arkansas are substantial and pursuant to their business as reflected in the Agreements which subjected them to the jurisdiction of Arkansas courts; the contacts are numerous as illustrated by the six shipments of seed produce to Arkansas as well as numerous phone calls and correspondence; defendants' contacts with Arkansas relate directly to the cause of action of this litigation; Arkansas's interest in providing a forum for its residents to bring these causes of action is great and unquestionable; and there is no overwhelming inconvenience to defendants in being subject to the jurisdiction in Arkansas since they reside in the bordering State of Missouri.

The April 3rd affidavit by Hughes states that from 2004 through 2006, defendants purchased seed from plaintiff as well as receiving and processing seeds grown by plaintiff that were then sold and delivered to seed customers. He continues that defendants also received and processed seeds for plaintiff that were grown by third-party suppliers which defendants would ship to various seed customers after processing the third-party seed for plaintiff.

Hughes states that, at the outset of the business relationship between the parties, plaintiff presented defendants with a "Conditioning Agreement" and an "Associate Production and Marketing Agreement" (Agreements) which each provide that they shall be interpreted in accordance with Arkansas law and jurisdiction for any related cause of action, and each Agreement is entered into in Lonoke County, Arkansas. He sets out that plaintiff requested defendants to execute and return the

Agreements to plaintiff; that defendants failed to deliver executed Agreements to plaintiff; that defendants represented to plaintiff that they would perform and continue to perform pursuant to the terms of the Agreements; that defendants did perform and continued to perform, except for the breaches alleged in the complaint, pursuant to the terms of the Agreements by processing seeds for plaintiff and performing the other various obligations set forth in the Agreements; that defendants never expressly rejected the terms of the Agreements nor did they perform contrary to the terms of the Agreements to plaintiff's knowledge at the time; that plaintiff relied on defendants' representations and purported performance of the Agreements by not requiring defendants to deliver executed copies of the Agreements to plaintiff before continuing their business relationship; and that as a result of defendants' representations and purported performance of the Agreements, defendants further represented to plaintiff that defendants would abide by all of the terms contained in the Agreements.

Hughes states, in performing the Agreements, defendants processed and shipped numerous orders of seed product to Arkansas, including but not limited to: shipment to United Agri Products, Inc. located in Blytheville, Arkansas on April 26, 2005; shipment to Agriliance, LLC, located in Texarkana, Arkansas on February 4, 2005; shipment to Vincent Soybean & Grain Co., Inc, located in Crawfordville, Arkansas on March 7, 2005; shipment to UAP Delta located in Portland, Arkansas; shipment to Home Oil Company located in Frenchman's Bayou, Arkansas on March 23, 2005; and shipment to plaintiff located in Scott, Arkansas on February 18, 2002.  Copies of the order statements reflecting those shipments are attached to the affidavit.

Finally, Hughes avers that defendants continuously made numerous telephone calls and sent numerous correspondence to plaintiff's office in Arkansas in performing the subject Agreements.

Defendants filed a reply, on April 10th, with a supplemental affidavit by Gooch. They assert that the connections with the forum found to be too attenuated and insubstantial to satisfy due process in a recent case Eighth Circuit case are similar to those at issue here. They summarize that Sikeston Seed is a Missouri corporation, Gooch is a resident of Missouri, they do not engage in business in Arkansas, they do not sell products in Arkansas, they do not solicit business from Arkansas, Sikeston Seed is not registered with the Arkansas Secretary of State, Sikeston Seed is not registered with the Arkansas State Plant Board, the contract at issue was entered into in Missouri, the alleged breach as well as the alleged fraudulent activities all occurred within Missouri while plaintiff's evidence is a clause in an unsigned contract providing Arkansas with jurisdiction over this matter, six tickets showing addresses of Arkansas businesses, and telephone calls and communications with Arkansas.

Defendants argue that the draft contract submitted by plaintiff was never signed by Sikeston Seed, the relationship between plaintiff and Sikeston Seed was not governed by any written contract, and a choice of law provision in a contract is "insufficient in itself to confer jurisdiction" (cite omitted). They contend that the tickets represent seed which belonged to plaintiff which Sikeston Seed cleaned and delivered to plaintiff in Missouri, the tickets do not reflect sales or payment of any type as the tickets show lines through those portions of the ticket and simply say "out," and the tickets reflect transactions by which Sikeston Seed relinquished seed which had always belonged to plaintiff that could be shipped to Arkansas, but Sikeston Seed did not sell seed to the Arkansas persons or entities and did not make arrangements for or pay for the transportation charges.

In Gooch's April 10th supplemental affidavit, he counters that no contracts were ever signed by Sikeston Seed and the course of conduct between Sikeston Seed and plaintiff was not governed

by any written contracts. Gooch states that the sales tickets submitted by Hughes relate to seed which was cleaned by Sikeston Seed for plaintiff and do not represent sales by Sikeston Seed to Arkansas persons and/or entities. He continues that those tickets relate to seed which belonged to plaintiff which Sikeston Seed cleaned and delivered to plaintiff in Missouri; the tickets all reflect no sales or payments of any type – instead, they all show lines through those potions of the ticket and simply say "out;" plaintiff owned the seed and directed Sikeston Seed to relinquish the seed to certain trucking companies in each of those transactions; Sikeston Seed delivered the seed to trucking entities which had been arranged either by plaintiff or by the purchasers of the seed from plaintiff; the tickets reflect transactions by which Sikeston Seed relinquished seed which had always belonged to plaintiff so that it could be shipped to various persons or entities in Arkansas; and that Sikeston Seed did not sell seed to those persons or entities and did not make arrangement for or pay for the transportation charges.

> To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff "must state sufficient facts in the complaint to support a reasonable inference that [the defendants] can be subjected to jurisdiction within the state. Once jurisdiction ha[s] been controverted or denied, [the plaintiff] ha [s] the burden of proving such facts." Block Indus. v. DHJ Indus., Inc., 495 F.2d 256, 259 (8th Cir. 1974) (internal citation omitted). The plaintiff's " 'prima facie showing' must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." Id. at 260.  See also Davis v. St. John's Health Sys., Inc., 348 Ark. 17, 71 S.W.3d 55, 57 (2002) ("If the complaint does not allege sufficient facts on which personal jurisdiction can rest, then the complaint is factually deficient.  Mere conclusory statements devoid of a factual foundation do not suffice in this inquiry.") (internal citation omitted); Jet Charter Serv., Inc. v. W. Koeck, 907 F.2d 1110, 1112 (11th Cir. 1990) ("When a defendant raises through affidavits, documents or testimony a meritorious challenge to personal jurisdiction, the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents."); Taylor v. Portland Paramount Corp., 383 F.2d 634, 639 (9th Cir. 1967) ("We do not think that the mere allegations of the complaint, when contradicted by affidavits, are enough to confer personal jurisdiction of a nonresident defendant. In such a case, facts, not mere allegations, must be the touchstone.").

Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072-1073 (8th Cir. 2004).

"A federal court may assume jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution. Arkansas's long-arm statute extends personal jurisdiction over nonresidents to the extent permitted by the Constitution." Ferrell v. West Bend Mut. Ins. Co., 393 F.3d 786, 790 (8th Cir. 2005)(internal citations and quotation marks omitted).

The following excerpt from the very recent case of Primus Corp. v. Centreformat Ltd., 2007 WL 473275, *1 (8th Cir. 2007),[3] and cited by defendants in their reply, provides an excellent analysis of what does or does not constitute sufficient minium contacts:

> We agree with the district court that Primus has failed to make a sufficient showing regarding the Due Process Clause requirement of substantial contacts. In order to satisfy due process, the defendant must have sufficient minimum contacts with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." CPC-Rexcell, Inc. v. La Corona Foods, Inc., 912 F.2d 241, 243 (8th Cir. 1990) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) and quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The minimum contacts between the defendant and the forum state "must be based upon 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Ferrell v. West Bend Mut. Ins. Co., 393 F.3d 786, 790 (8th Cir. 2005) (quoting Burger King Corp., 471 U.S. at 475). In general, it is easier to establish due process "over a nonresident seller shipping goods into the forum state in contrast to a nonresident buyer." Fairbanks Morse Pump Corp. v. ABBA Parts, Inc., 862 F.2d 717, 719 (8th Cir. 1988) (internal citations omitted). When evaluating minimum contacts, we consider five factors: "(1) the nature and quality of [Centreformat's] contacts with [Missouri]; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of [Missouri] in providing a forum for its residents; and (5)[the] convenience of the parties." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073-74 (8th Cir. 2004) (last alteration in original), cert. denied, 543 U.S. 1147 (2005).

---

[3]Eighth Circuit Court of Appeals Local Rule 28A(i).

>After reviewing the record, we agree with the district court's determination that Centreformat lacked sufficient minimum contacts with the state of Missouri to support personal jurisdiction. See <u>Scullin Steel Co. v. Nat'l Ry. Utilization Corp.</u>, 676 F.2d 309, 313 (8th Cir. 1982) (holding that phone and facsimile communications to the forum, purchase orders and payments sent to the forum, a choice of law clause within the contract regarding the forum state, and delivery of the product within the forum state were not enough to satisfy minimum contacts). While a choice of law clause in a contract can be considered as part of a due process analysis, the one in question here does not constitute a waiver of Centreformat's due process rights. See <u>Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.</u>, 89 F.3d 519, 523 (8th Cir. 1996) (noting that a choice of law provision may be considered when determining if jurisdiction is proper, but it is not enough alone to confer jurisdiction upon a party); <u>Medicine Shoppe Int'l, Inc. v. J-Pral Corp.</u>, 662 S.W.2d 263, 274-75 (Mo.Ct.App.1983) (stating that the language in the choice of law provision was "not sufficiently definite nor so unequivocal on the question of submission to the jurisdiction of Missouri courts, to constitute an effective waiver of ... due process"). The record reflects that the quantity and quality of Centreformat's contacts with the state are minimal, consisting primarily of written and telephonic communications. See <u>Porter v. Berall</u>, 293 F.3d 1073, 1076 (8th Cir. 2002) ("Contact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause."). Centreformat has no agents or property in the state, nor is it licensed to do business within the forum. Further, the contract was not finalized there, nor did Centreformat travel to Missouri for negotiations. The three visits by Centreformat employees to Missouri for training are attenuated contacts with the forum, and the claims in the complaint do not arise out of these contacts. See <u>Romak USA</u>, 384 F.3d at 984 ("The cause of action must arise out of or relate to a defendant's activities within a state.") (internal citations and marks omitted); <u>Pecoraro v. Sky Ranch For Boys, Inc.</u>, 340 F.3d 558, 561 (8th Cir. 2003) ("Jurisdiction is appropriate only where a defendant has sufficient 'minimum contacts' with the forum state that are more than random, fortuitous, or attenuated, such that summoning the defendant would not offend traditional notions of fair play and substantial justice.").

The case of <u>Scullin Steel</u> cited with approval in <u>Primus Corp.</u> appears to be applicable. As the appellate court pointed out "phone and facsimile communications to the forum, purchase orders and payments sent to the forum, a choice of law clause within the contract regarding the forum state, and delivery of the product within the forum state were not enough to satisfy minimum contacts." <u>Primus Corp.</u> at *1.

However, the Court finds that several facts are in dispute that need further development before a determination on personal jurisdiction can be made. "While the plaintiffs bear the ultimate burden of proof, jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing." Epps v. Stewart Information Services Corp., 327 F.3d 642, 647 (8th Cir. 2003)(citations omitted).

For instance, Hughes states in his affidavit that defendants made at least six shipments of seeds to Arkansas customers and has submitted tickets purportedly showing those shipments. On the other hand, Gooch has countered that while the tickets might reflect an Arkansas address of the customer, these tickets do not show a sale of any kind since "sold by," "cash," "COD," "charge," "on acct," "mdse retd," and "paid out" on each ticket have a line drawn through those headings and instead have the word "out" written to the side. The six tickets further reflect a line drawn through "amount" as to the items listed. Four of the tickets show a truck and sometimes a trailer designation, one indicates that the items were picked up by Pro Time Trucking, and one does not identify the mode of transportation. Moreover, Gooch says that these were not sales, but were a relinquishment of plaintiff's seed which was delivered to trucking entities which had been arranged either by plaintiff or by the purchasers of the seed. The Court will require an evidentiary hearing to resolve the conflicts presented by the affidavits of Gooch and Hughes which will be held on Monday, July 2, 2007, at 2:00 p.m.

IT IS SO ORDERED this 6th day of June, 2007.

_____
UNITED STATES DISTRICT JUDGE